## SHANNON *v.* BRUNER.

(*Circuit Court, E. D. Missouri, E. D.*   February 17, 1888.)

PATENTS FOR INVENTIONS—INFRINGEMENT—DAMAGES.

> Plaintiff's patent was a device intended for use in laying a particular kind of pavement, in common use, and which any one might lay. In an action for damages for an infringement of his patent, the measure of damages is the profits received by the infringer over what would have been derived by adopting some other available method, he not being required, by the terms of his contract, to use this particular device.

On Exceptions to Master's Report.

*Upton M. Young, Albert Blair,* and *Alexander Young,* for complainant.
*George H. Knight* and *F. N. Judson,* for defendant.

THAYER, J., (*orally.*) Under an order of reference, requiring the master to ascertain and report the amount of the gains and profits which accrued to the defendant by reason of an infringement of complainant's patent heretofore adjudged, (*ante,* 290,) the master has reported in favor of an allowance of merely nominal profits. Complainant has taken five exceptions to the report, but, practically, there are only two grounds of objection specified, and they may be conveniently and substantially stated as follows: *First.* The patent involved is the reissued Schillinger patent,

No. 4,364, and "relates to a concrete pavement, * * * laid in sections, so that each section can be taken up and relaid without disturbing the adjoining sections." The master held that for the infringement complained of, the defendant was not liable to the patentee for the entire profit realized on those jobs in which the device covered by the patent had been used, but only for such portion of the profit as was clearly traceable to the use of the patented device or process. To such ruling the complainant excepts, and insists that he is entitled to the entire manufacturer's profit, which, in this case, amounts to over $8,000. *Second.* He insists that if his first position is untenable,—that is to say, if he is compelled to accept such portion of defendant's business profit as is clearly traceable to the use of the patented device,—that there is evidence in the case showing what such profit was, and warranting a decree for a substantial amount.

The first exception is based mainly on the case of *Elizabeth* v. *Pavement Co.*, 97 U. S. 121. The subsequent case of the *Manufacturing Co.* v. *Cowing*, 105 U. S. 253, is also referred to, but that decision was predicated on a special state of facts, and is irrelevant to the matter in hand. To my mind, at least, it seems clear that this case is not controlled by the principle of the decision in *Elizabeth* v. *Pavement Co.*, but by the rule announced in *Mowry* v. *Whitney*, 14 Wall. 648; and such was also the opinion of Mr. Justice BLATCHFORD, as circuit judge, in *Schillinger* v. *Gunther*, 15 Blatchf. 303. It is, perhaps, unnecessary to point out the distinction between this case and the one relied upon by the complainant, but the apparent confidence with which the case of *Elizabeth* v. *Pavement Co.* is cited justifies such a course. In the latter case, as has many times been remarked, the patent involved covered a combination that was complete in itself, and constituted a new pavement, commonly called the "Nicholson," which differed from any other then in use. As combined and arranged, the Nicholson pavement was a new structure,—"a new thing, like a new chemical compound." It was this new thing, or pavement, complete in itself, which the defendant made, and he made it as a complete structure. He did not embody it as an improvement in some other pavement which he was employed to construct. Under such circumstances, it followed that whatever the defendant realized above the cost of construction was a profit realized by the infringement. The principle that controlled the case, so far as the estimate of the profits was concerned, is the same that governs when a manufacturer makes and sells an entirely new machine, which, as an entirety, is protected by letters patent. In such case the profit recoverable is the difference between the cost to the manufacturer and the price realized on sale. Walk. Pat. §§ 717, 735; *Rubber Co.* v. *Goodyear*, 9 Wall. 804. The case at bar is an essentially different case. Schillinger simply devised a new method of laying a particular kind of pavement, to-wit, concrete, which was before well known, and in common use. He did not invent a new pavement. His device was, according to his own admission, an improvement on a pavement already in common use, which any one might lay; and as an invention it was not susceptible of use, and

was of no value, except as it was employed in the construction of concrete pavements, which it was intended to improve by rendering them more durable. The proof of these statements is found in the specifications of the Schillinger patent. The patentee says he has "*invented a new and useful improvement in concrete pavements.*" He then proceeds to describe an invention which in this very case was held "to consist in dividing a concrete pavement as it is laid into blocks or sections, so that one section may be removed or repaired without injury to the adjoining sections, the division being effected by interposing some substance, such as tar paper, or an equivalent, between the blocks," so as to effectually separate them, and, at the same time, produce a tight joint. *Ante,* 290. Such being the nature of the Schillinger invention,—that is to say, as it was intended to be used in the construction of an old and well-known pavement, for the purpose of rendering it more serviceable than formerly,—it is clear, beyond question, that the patentee cannot recover from an infringer the business profit realized by the infringer on every pavement which has been laid according to that particular method.

This is pre-eminently a case in which the profit to be recovered of the infringer must be ascertained by determining what advantage was derived from the use of complainant's method over what would have been derived by the use of some other available method. *Mowry* v. *Whitney,* 14 Wall. 651, and *Black* v. *Thorne,* 111 U. S. 122, 4 Sup. Ct. Rep. 326. In the case of *Elizabeth* v. *Pavement Co.,* Justice Bradley remarked, as a reason for rejecting the rule in *Mowry* v. *Whitney,* which had been invoked, that the case then under consideration was "not the case of a profit derived from the construction of an old pavement, together with the superadded profit derived from adding an improvement made thereto by Nicholson;" thereby clearly recognizing the rule of *Mowry* v. *Whitney* as applicable to a case like the one at bar; for, beyond all question, the defendant in this case has done no more than to construct an old pavement with an added improvement suggested by Schillinger. He is chargeable, therefore, with profits only to the extent that he derived some special advantage from the use of the improved method over what would have been derived by adopting some other available method; and, in so ruling, and in rejecting complainant's claim to the business profit on all jobs in which an infringement was shown, the master committed no error.

The next question to be considered is whether the evidence before the master showed that any such advantage or gain had been derived from the use of the complainant's invention, and whether the evidence furnished any *data* for an approximately correct estimate of such gain. This question is not embarrassed by any consideration of the question upon which party rested the burden of proof, for the master's ruling on that point has not been excepted to, and cannot be reviewed. It appears, from the evidence in the case, that in making contracts for the laying of pavements the defendant was not required, or even asked, by his customers to lay them according to the Schillinger method, or even to divide a pavement into sections. He usually contracted to lay a concrete pavement of certain dimensions, and made a practice of giving a guaranty to

his customers with reference to the quality and durability of the pavement to be laid; thereafter he selected such method of doing the work as he deemed advisable. It is manifest that the use of the Schillinger invention by the defendant was not made necessary by a public demand for a pavement laid according to that patent. When defendant made use of the invention, it was his voluntary act, not enforced by any public demand; and, if he derived any special advantage therefrom, it is obvious from the testimony that that advantage consisted, not in securing more work or in lessening materially the cost of construction, but in being able to lay a more perfect and durable pavement than could be produced by other available methods, thereby avoiding the expense of making repairs, which might otherwise be required of him under the terms of his guaranty.

It appears, from the evidence before the master, that the division of concrete pavements into sections, or blocks, not exceeding 10 or 12 feet square, adds greatly to the utility and wear of such pavements. So essential is it now deemed to make such divisions into blocks that pavements are rarely laid in a different manner. Schillinger's patent contemplated such division into sections, and in that feature consisted in part, at least, the utility of the invention. It was shown, however, before the master that there were other feasible methods, not covered by the Schillinger patent, by which a concrete pavement could be laid in sections. I shall only mention one of such other methods, which appears to me, from the evidence, to have been well known at the time of the infringement, and to have been open to use, by means of which a concrete pavement could have been as cheaply laid as by the Schillinger process. I refer to the method practiced by the defendant since the interlocutory decree in this case, of laying one block, and, after the concrete has partially set, removing the scantling that forms one side of the frame of the block, and laying the next block immediately against that, and so on successively, without introducing any separating medium between the blocks, as in the Schillinger process. This method of laying a pavement is not an infringement of complainant's patent, and, according to the concurrent testimony of all the witnesses, the process last described separates the pavement into blocks or sections. The testimony in the case convinces me that plastic concrete laid against an adjoining block when it is only partially set, and after the frame has been removed, does not unite with it so as to form practically one block. The weight of testimony is that the second one laid does not adhere to the first; that the blocks are divided, when fully set, by a sensible space, which is sufficient, at least, to interrupt the line of fracture, if either block is cracked from any cause. Schillinger himself concedes, in his specifications, that one block laid in immediate contact with an adjoining block, which is partially set, will not adhere to it in consequence of shrinkage.

Such being the state of the case, the ultimate question before the master was whether the joint formed by the Schillinger method,—that is to say, by introducing some substance, like tar paper, or its equivalent, between the blocks,—was better than a joint formed as last described,

without any separating medium, and by a process which the defendant was free to adopt, and, since the decree, has adopted. It might be suggested that the Schillinger method forms a tight joint, and keeps out the water, while the other joint does not. Again, it might be suggested that the Schillinger method permits the blocks to move more freely, and that the separation is more perfect, and that less injury is liable to be done to the adjoining blocks by settlement, upheaval, or fracture of any of the blocks. These are possible advantages of the Schillinger method of forming a joint which may have induced the defendant to adopt that method in lieu of others that were open to him. I have carefully examined all the testimony, however, and I have failed to find anything to warrant me in saying that they are positive advantages by which the defendant realized a substantial profit; much less have I been able to find any testimony to enable me to make a definite estimate of the amount of such profit.

The result is, in view of the foregoing considerations, that the exceptions to the report must be overruled, and the report confirmed. It is so ordered.