## COLUMBIA WIRE CO. v. KOKOMO STEEL & WIRE CO.

(Circuit Court of Appeals, Seventh Circuit. July 27, 1911. Rehearing Denied October 4, 1911.)

No. 1,712.

PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE.

The measure of the profits recoverable from an infringer of a patent for a machine is the advantage he gained by the use of the patented machine, as compared with other machines which were open to him at the time of the unlawful appropriation, and not with such as were open at the date of the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*

Accounting by infringer for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

Appeal from the Circuit Court of the United States for the District of Indiana.

Suit in equity by the Columbia Wire Company against the Kokomo Steel & Wire Company. From a decree awarding nominal profits only for infringement, complainant appeals. Affirmed.

Charles MacVeagh and Charles C. Linthicum (William O. Belt and Walter M. Fuller, of counsel), for appellant.

Thomas A. Banning (C. C. Shirley, of counsel), for appellee.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge. In Columbia Wire Co. v. Kokomo Steel & Wire Co., 143 Fed. 116, 74 C. C. A. 310, we held that certain claims of patent No. 365,723, June 28, 1887, to Bates, for "improvements in wire-barbing machines," were valid and infringed, and ordered an accounting. From a decree awarding appellant only nominal damages, this appeal was taken.

For the purposes of this decision we will assume that appellant is right in saying that the claims in suit covered an improved machine, rather than improvements in a machine, and that appellee would therefore be liable for all advantages gained from using the machine as an integer.

As a standard for comparison appellant took the Stover machine, proved that it was the best that was open to public use before Bates invented the machine of the patent, and introduced testimony from which the pecuniary advantages gained by appellee through its infringement might definitely be reckoned. Findings of fact by the master included these: First. Appellee, after a period of infringement, changed its machines to a noninfringing type that produced at no greater expense as large a quantity and as good a quality of barbed wire as did the Bates machine. Second. When appellee appropriated the Bates invention, other machines that would have made a more favorable comparison with the Bates machine than did the Stover were open to appellee's use. A reading of the testimony has not convinced us that these findings, approved by the court, are not fairly sus-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tainable. Applying to these findings a rule that an infringer is only to pay for the advantages of the patented machine over machines that were open to his use at the time of the unlawful appropriation, and not to pay for the advantages of the patented machine over machines that were open at the date of the patent, the master and the court held that there was no basis for a recovery of more than nominal damages.

Appellant asserts (and justly it would seem) that to base the decree on the first finding would violate the rule of law adopted by the master. To what extent, if at all, the law will permit an infringer to avail himself of developments in the art subsequent to his unlawful appropriation, as a defense or mitigation in an accounting, is a query to which we need not essay a definitive answer if the master's rule is correct; for that rule applies to the second finding, and denies the contention on which appellant chose to rest its case, namely, that the only lawful standard is a comparison of the patented machine with the best that was available before the issuance of the patent.

In determining the law applicable to the facts of this case, we attempt no distinction, if any is possible, between machines that are available because they are not under patents and patented machines that are available because they are freely sold in the market by the patentee. Here the controversy narrows to a question of time as an element in the proper standard of comparison.

In support of their respective views the parties cite many cases.[1] Some of the citations from the Federal Reporter may support the respective contentions for which they are adduced. Expressions are found in opinions of the Supreme Court, concerning the meaning of which and their applicability to the facts of this case the parties debate. No Supreme Court decision is known to us in which the recorded facts show that machines, devised since the patent and comparing with the patented machine more favorably than did the machines of the prior art, were open to public use at the time the defendant began the infringement, and in which such facts were held to be irrelevant. Nor are we aware that the Supreme Court has ever propounded and answered, by way of argument or illustration, the precise question that is before us for decision. In the absence of con-

[1] Appellant: Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860; McCreary v. Pennsylvania Canal Co., 141 U. S. 459, 12 Sup. Ct. 40, 35 L. Ed. 817; Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; Turrill v. Ill. Cent. R. Co. (C. C.) 20 Fed. 912; Lawther v. Hamilton (C. C.) 64 Fed. 221; Fullerton Ass'n v. Anderson-Barngrover Mfg. Co., 166 Fed. 443, 92 C. C. A. 295; Robinson on Patents, vol 3, pp. 513, 514; Walker on Patents (4th Ed.) § 725.

Appellee: Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860; Mfg. Co. v. Cowing, 105 U. S. 255, 26 L. Ed. 987; Thomson v. Wooster, 114 U. S. 116, 5 Sup. Ct. 788, 29 L. Ed. 105; Tilghman v. Proctor, 125 U. S. 146, 8 Sup. Ct. 894, 31 L. Ed. 664; Keystone v. Adams, 151 U. S. 148, 14 Sup. Ct. 295, 38 L. Ed. 103; Black v. Thorne, 1 Ban. & A. 156, Fed. Cas. No. 1,466; Munson v. City of New York (C. C.) 16 Fed. 563; National Car Brake Shoe Co. v. Terre Haute Car Co. (C. C.) 19 Fed. 518; Shannon v. Bruner (C. C.) 33 Fed. 873; Mosher v. Joyce (C. C.) 45 Fed. 206, and 51 Fed. 441, 2 C. C. A. 322; Rose v. Hirsh (C. C.) 91 Fed. 150; Hohorst v. Hamburg-American Packet Co., 91 Fed. 660, 34 C. C. A. 39; Wales v. Waterbury Mfg. Co., 101 Fed. 126, 41 C. C. A. 250.

trolling precedents, it is incumbent upon us to express the judgment at which we have independently arrived.

A manufacturer who devises a machine that he honestly believes he has a right to use, and who in an injunction suit ultimately is found to be an infringer, as was the case with appellee, is not to be mulcted in punitive damages. Equity is satisfied if he accounts for all the pecuniary benefits he derived from the use of the infringing machine. If there were no other way of obtaining the result, he might rightly be held for all the profits he made from the output of his establishment. But if, as here, other machines for doing the same work, though less effectively, were available at the date of the patent, the whole advantage would lie in the increase of efficiency. As to an infringer who at that stage of the art appropriated the invention, the standard of comparison is clear. He has taken to himself all the advantages that belonged exclusively to the patentee in the field of competition. Fifteen years later, when the art has advanced to include other noninfringing machines, available to manufacturers and more effective than those of the prior art, the patentee cannot avoid their competitive effect. At this stage the only actual advantage of the patented machine is its superiority, if any, over these later machines that are not dominated by the patent. If at this stage one should choose to enter upon the manufacture of barbed wire, he could take the later machines without giving the patentee any cause of action. If, however, he should adopt a machine that finally was adjudged to be an infringement, all that he would actually gain by the infringement would be the excess in effectiveness of the infringing machine over the later, available, competitive machines. To hold him accountable for more, to make him pay for the advantages of the invention over the prior art, would attribute to the patent a virtue it did not really have at the later period, would penalize the infringer simply because he was an infringer, and would mulct him in vindictive damages to the extent of the difference in effectiveness between the open prior art and the open current art.

This leads to a rejection of appellant's proposition; and the decree of the Circuit Court is accordingly affirmed.