## LA CROSSE PLOW CO. v. VAN BRUNT.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915.)

### No. 2111.

PATENTS ☞328—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.

On an accounting for profits of infringement of the Van Brunt patent, No. 659,881, for improvement in grain drills, by the use of the scraper for cleaning the furrow opener, covered by claim 5, where the evidence supported the findings of the special master and trial court that defendant had so kept its books and conducted its business as to render it impossible to ascertain what portion of the profits from the sale of drills having the infringing device was due to that feature, and that in a certain portion of the territory covered by defendant's sales, owing to the sticky character of the soil, the use of the infringing scraper was the only thing that made the machines marketable, it was not error to award com-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plainant all of the profits made on the infringing machines sold in such territory.

[Ed. Note.—Accounting by infringer for profits, see notes to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120· C. C. A. 389.]

Appeal from the District Court of the United States for the Western District of Wisconsin; Arthur L. Sanborn, Judge.

Suit in equity by Willard A. Van Brunt against the La Crosse Plow Company. From a final decree (208 Fed. 281), defendant appeals. Affirmed.

The matters before the court on this appeal involve the accounting based upon the decree of the District Court entered in pursuance of the opinion and order of this court in Van Brunt v. La Crosse Plow Co., 168 Fed. 927, 94 C. C. A. 331, wherein the court found patent No. 659,880, for improvement in grain drills, issued October 16, 1900, to be valid and infringed. The particular feature of the grain drill in question found by this court to constitute infringement is that part of the so-called furrow-opening portion of the drill termed the scraper, whereby the convex face of the disk is kept clean and the tendency of dirt and trash to accumulate and interfere with the operation of the drill is counteracted. The scraper is the device of claim 5 of said patent.

The cause was referred to a special master to take and report the accounting. He reported that, notwithstanding the fact that appellant had produced in evidence several other seeding machines which it claimed were proper standards of comparison, from which appellant claims it appeared that it had realized no profit from the use of the infringing scraper, the record disclosed no proper standard of comparison; that a profit of $17,396.17 had been received by appellant from the sale of seeders employing the infringing scraper; that owing to the sticky character of the soil in the Northwest territory, the use of the infringing scraper was the feature that made appellant's seeding machines marketable in that locality; and that about 60 per cent. of appellant's sales of seeders using the infringing scraper was made in that region, and that the said profit of $17,396.17 was attributable to the presence of the scraper in suit. The master further found that appellant had, by its method of keeping its books and its manner of conducting its said business, so commingled the proceeds from its sales of seeders as to make it practically impossible for appellee to ascertain what portion of said profits was realized from the sale of the infringing scraper as distinguished from the rest of the seeder; that appellant had not attempted to make any apportionment of the profits, and that unless it were possible to arrive at some apportionment from the evidence appellant would, under the rule laid down in the Garretson Case, 111 U. S. 121, 4 Sup. Ct. 291, 28 L. Ed. 371, be liable for the whole amount of the profits realized from the sale of the complete machine; that the furrow opener is a separable part of the seeder; that the parts of the seeding machine sold by appellant other than the scraper belonged to it; that an approximate apportionment of said profits between the scraper and the other parts of the machine might equitably be made upon the basis of the ratio of the relative cost of the two parts, which he ascertained to be that of two to one in favor of appellant, or $6,607.76 to appellee and $10,788.41 to appellant, which adjustment the master favorably suggested to the District Court, with the proviso that, if the court did not approve of that method of apportionment, then appellant should be decreed to pay to appellee the whole sum of $17,396.17 as aforesaid. The District Court approved the master's findings of fact, but disapproved his apportionment of the profits and the method thereof.

From the master's report, and the evidence in support thereof, the court found that other devices were successful in localities where the drilling for planting was comparatively dry, but that the infringing furrow opener captured the Northwest sticky territory, in which region appellant disposed of about 60 per cent. of its infringing product, while the remaining 40 per cent. was sold for use in localities having less sticky soils. From these premises the District Court proceeded to enter a decree holding appellant for the total

profits received by it in the Northwestern territory, or three-fifths of the total profit from the sale of seeders bearing the infringing furrow openers in all localities, being the sum of $10,437.70, together with interest from the date of the master's report, and costs.

Seventy errors are assigned by appellant, which may be summed up as follows, viz.:

(1) Appellee had not given appellant notice that the device in suit was patented according to law.

(2) That notwithstanding several available standards of comparison were in evidence showing no profits thereover, the court decreed profits and held the standards offered were not proper standards.

(3) The court failed to require appellee to prove what part of the profits arose from the scraper.

(4) The court held that, owing to the failure to keep and show books, it was impossible to determine what proportion of profits was due to the use of the infringing device.

(5) The court erred in holding that appellee is entitled to recover the entire profits in the Northwest territory, in view of the Court of Appeals' exclusion of claims 1, 2, 3, and 4, and the withdrawal of claim 9, of the patent in suit.

(6) The court held that the infringing device was deemed necessary to success in the Northwest territory.

(7) In granting substantial profits, the court was indulging in speculation.

(8) The court overruled appellant's motion to require appellee to apportion the profits, and in holding that the burden of apportionment was on appellant, since appellee made no attempt to apportion profits.

(9) The court awarded the sum of $10,437.70 to appellee as profits.

Other facts appear in the opinion.

Fred Gerlach and George P. Fisher, both of Chicago, Ill., for appellant.

Border Bowman, of Springfield, Ohio, for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The ultimate question here involved is: With what sum should appellant be charged, if any, as profits growing out of the sale of seeding machines using the infringing scraper? Having ascertained that appellant realized a profit of $17,396.17 from machines so equipped, as to which finding no error is assigned, it was the duty of the trial court to determine, if possible, from the evidence, what part of that profit, if any, arose from the use of the infringing furrow opener.

Where, as in the present case, the proceeds of the sales of seeders was so hopelessly confused as to make such discovery impossible from appellant's books and business methods and other facts in evidence, appellee was relieved from making any apportionment of profits, and it became obligatory upon the appellant to take up that burden. Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653. This appellant undertook to do by offering in evidence certain other furrow opening devices, in order to show that, by the use thereof, appellant derived no profits "over what it would have had in using other means then open to the public, and adequate to enable it to obtain an equally beneficial result"—following the rule laid down in Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664, Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609, and Columbia Wire Co. v. Kokomo, 194 Fed. 108, 114 C. C. A. 186.

We do not deem it necessary to enumerate the various devices produced in evidence by appellant as so-called standards of comparison. Suffice it to say, no one of them disclosed the infringing scraper in suit. Some of them were not open to appellant; others were too broad or too wide or too thick to meet the requirements of seeding in the Northwest territory; some were double disk furrow openers, some single; some had the single disk with cast scraper; and some were in the form of shoe drills or furrow openers. After going carefully into all these, the master found that none of them compared favorably with the infringing scraper, or could be used as a standard of comparison therewith, and concluded with the finding that in the Northwest territory, with its sticky soil, the seeders equipped with the infringing scraper practically supplanted every other seeding machine, and that, in order to get an entrance into the sticky soil territory, it was essential that appellee's device be employed. It is strongly corroborative of this evidence that appellant and, as the evidence shows, many others have copied it, either as infringers or licensees. We find the conclusion of the master well supported by the evidence.

Appellant introduced evidence to show that subsequent to the infringing period it used a noninfringing single disk furrow opener with a broad scraper, which the master found was successful in the Northwest territory for a short time and then suspended. That the infringed scraper lives, and that the broad scraper died, would seem to negative the claim that the latter was adapted to the sticky territory's requirements, even if the former were competent. Thus we are led to the conclusion that it was the infringing scraper that commanded the planting trade in the Northwest, and that without it the seeding trade of appellant would not have resulted profitably to it. We further conclude that, in view of the fact that appellant made it impossible for appellee or the court to apportion the profits as between the infringing scraper and the other parts of said seeding machine, appellee, under the decisions, is entitled to all the profit realized by appellant from the sales of seeding machines carrying said infringing scraper in said Northwest territory. There seems to be no exception to the finding of the District Court and the master that 60 per cent. of appellant's infringing sales were had in said Northwest territory. This method of apportioning the profits seems fair to us. We are therefore of the opinion that the decree of the District Court, in awarding to appellee profits to the amount of $10,437.70 against appellant, was right upon the evidence.

We do not deem the objection of want of notice well taken. The filing of the bill and service of process was notice, and the accounting period was then begun. American Caramel Co. v. Thomas Mills & Bros., 162 Fed. 147, 89 C. C. A. 171 (3d Cir., C. C. A.).

The decree of the District Court is affirmed.